## STATE EX REL. NICHOLSON v. FERGUSON et al. as Board of County Commissioners.

(134 N. W. 872.)

In 1883 congressional township 146 north of range 56 west in Foster county was organized into a common-school district. In 1900 the city of Carrington was incorporated, embracing all of section 19 in said township. In 1902 pursuant to a petition, notice, etc., an election was held in such school district for the purpose of organizing the same into a special school district, which proposition carried by practically a unanimous vote, and ever since the date of such election the inhabitants of such township have recognized such special

school district corporation, and such corporation has regularly elected its officers, levied taxes, issued bonds, and expended large sums for educational purposes. In 1906 such congressional township, with the exception of section 19, was organized as a civil township. Thereafter, and in September, 1907, the resident electors and taxpayers of such civil township petitioned the board of county commissioners and the superintendent of schools to segregate the territory embraced in such civil township from the school district aforesaid, and to organize therein a distinct school district. Such petition was denied, and relators seek by mandamus to compel compliance therewith by the officers aforesaid. *Held:—*

**Mandamus — inquiry into due organization of school district.**

1. That such special school district is at least a *de facto* school corporation, and its due organization will not be inquired into in a mandamus proceeding.

**Petition for organization of school district.**

2. That the territory which relators seek to have segregated and organized into a distinct school district being embraced within such special school district, § 949, Rev. Codes, 1905, is controlling. This section provides "that the county commissioners shall detach any part of such adjacent territory which is at a greater distance than 3 miles from the central school in such special district, and attach to any adjacent school or special district or districts upon petition to do so, signed by three fourths of the legal voters of such adjacent territory."

The relators were therefore not entitled to the relief prayed for, and the district court properly quashed the writ.

Opinion filed January 29, 1912. Rehearing denied February 27, 1912.

Appeal from District Court, Foster county; *J. A. Coffey*, J.

From a judgment quashing an alternative writ of mandamus, plaintiffs appeal.

Affirmed.

*S. E. Ellsworth,* for appellants.

*Edward P. Kelly* and *C. B. Craven.* for respondents.

No provision in law providing for the relief prayed for by relators. State ex rel. Laird v. Gang, 10 N. D. 331, 87 N. W. 5.

Existence of a *de facto* corporation cannot be collaterally assailed. Coler & Co. v. Dwight School Twp. 3 N. D. 249, 28 L.R.A. 649, 55 N. W. 587; State ex rel. Laird v. Gang, 10 N. D. 331, 87 N. W. 5.

Mandamus not a proper proceeding to compel exercise or discharge of an act or duty which is either judicial or discretionary in its character. 19 Am. & Eng. Enc. Law, 805.

Fisk, J.  This is an appeal from a judgment of the district court of Foster county, refusing the issuance of a peremptory writ of mandamus as prayed for by relators, and dismissing relators' alternative writ, with costs to respondents.

The facts are not in dispute and are in substance as follows:

At the time the alternative writ was issued, the respondents Ferguson, Ballard, and Zink were the duly elected, qualified, and acting county commissioners of such county, and respondent Cain was the duly elected, qualified, and acting county superintendent of schools therein.  That relators are resident citizens, electors, and taxpayers of the civil township of Carrington, which embraces all of the territory within congressional township 146, north of range 66 west in said county, with the exception of section 19 in such township, which embraces the municipality known as the city of Carrington.  In October, 1883, the entire congressional township aforesaid was duly organized as a general school district, and it thus remained until June 3, 1902. In November, 1900, section 19 in said township was duly and regularly organized and incorporated as the municipality of the city of Carrington, ever since which time it has existed as such municipal corporation.  On June 3, 1902, pursuant to a prior petition therefor and notice thereof, an election was held in school district No. 10, the purpose and object of which was to organize a special school district out of the entire territory embracing such district No. 10, at which election 110 votes were cast in favor of the organization of such special district, and but 3 votes were cast against such organization, whereupon the proposition to create such special school district was declared carried, and thereafter and in the month of June of said year an election was held for the purpose of electing five directors of such special district pursuant to law.  Such directors were elected and thereafter duly qualified, and from such date to the present time such special school-district organization has transacted business as such, and has at all times been recognized accordingly by the inhabitants therein.

In October, 1906, the territory embraced in such congressional township, with the exception of section 19, which was embraced within the limits of the city of Carrington, was duly and legally organized into a civil township and designated as township of Carrington.  Thereafter and in September, 1907, a petition numerously signed by resi-

dents and taxpayers of school district No. 10, outside of the city of Carrington, was presented to the county commissioners and county superintendent of schools of Foster county, and filed with the county auditor, praying that such commissioners and superintendent of schools take the necessary action to set apart and organize a distinct school district comprising the territory embraced in such civil township, being the entire territory in such congressional township, with the exception of section 19, which is embraced within the limits of the city of Carrington as aforesaid. Such petition was considered by said county board and superintendent of schools, and the prayer thereof denied; the grounds for such denial need not be stated, as we deem them immaterial.

The object of the writ in this proceeding is to compel the said board of county commissioners and superintendent of schools to comply with the prayer of such petition, and to take action looking to the segregation of the territory in said congressional township, outside of section 19, from the school district aforesaid, and to organize a new common-school district therein.

The relators and appellants assert that the inhabitants of the civil township of Carrington have the absolute legal right to have the territory embraced in such civil township set apart as a distinct school corporation, and their counsel argue with much ability that the public policy of the state as exemplified in its school laws is not only consistent with the assertion of such strict legal right, but is repugnant to any other theory or construction. The argument of appellants' counsel is evidently based upon the assumption that the territory in said congressional district was not organized into a special school district, and that consequently section 785, Rev. Codes 1905, and succeeding sections, are applicable. But even if this were true appellants could not succeed, for the obvious reason that Carrington school district No. 10 was organized as a general school district prior to the enactment of section 785, and consisted of territory not organized into a civil township, and consequently under the proviso in said section the organization of such civil township in 1906 did not have the effect of altering the boundary lines of such school townships, and such lines could not be changed except upon petition as therein required. State ex rel. Laird v. Gang, 10 N. D. 331, 87 N. W. 5. As was held by this court in the

above case, the mere organization as a civil township does not *ipso facto* constitute it such district school corporation, but it remains a part of the existing school district, and must so remain until a petition such as is defined in section 786 is presented to and acted upon by the board of county commissioners, with the advice and consent of the county superintendent.

It is idle, however, to consider what rights appellants might have had if, at the date such civil township was organized or such petition filed, Carrington school district No. 10 was still in existence; for, as we have seen, in the year 1902 a special school district was created out of the territory embracing such former school district, and the statutes relating to the segregation of territory from special school districts are therefore controlling. Appellants urge that such special school districts were not legally organized, but this is wholly immaterial in this proceeding. The record discloses that an election was called and held for the purpose of organizing such special district, and that at such election 110 votes were cast in favor of, and but 3 against, such proposed organization, and that thereafter five directors were elected pursuant to law, and that such district has at all times since been recognized and treated as a special school district. Taxes have been levied, bonds issued, and large sums of money expended by it for educational purposes, and it must be considered at least as a *de facto* special school district. This being true, it is well settled that the due and legal organization thereof cannot be inquired into in this proceeding. Coler v. Dwight School Twp. 3 N. D. 249, 28 L.R.A. 649, 55 N. W. 587; State ex rel. Laird v. Gang, supra.

The territory which relators seek to have segregated and organized into a district by itself being a part of such special school district, we must look to article 19, chapter 9, of our Political Code to determine relators' rights in this proceeding. Section 949 embraced in said article is very explicit and leaves no room for doubt. Among other things it provides: That any part of adjacent territory which is at a greater distance than 3 miles from the central school in such special district shall be detached by the county commissioners therefrom, and attached to any adjacent school or special district or districts, upon petition to do so signed by three fourths of the legal voters of such adjacent territory. The relators are not asking for any such

relief, and it is perfectly apparent from the foregoing that they are entitled to none other. We refrain from noticing the arguments of counsel as to the alleged equities of the case, for the reason, as we view it, the case is controlled not by the equities, but by the plain legislative mandates. If relators, in equity and good conscience, are entitled to the relief which they seek, they should apply to the legislature for a remedy. The courts are powerless to grant such relief under the statutes as they now exist.

Judgment affirmed.

BURKE, J., being disqualified, took no part in the decision.