M. E. LOUCKS, Respondents, v. J. H. PHELPS, County Superintendent of Schools of Divide County, North Dakota, and CARL SCHULTZE, C. L. RUPPERT, and A. L. STAKESTON and G. F. LOUCKS, and CARL SCHULTZ, CHARLES BISSONNETTE AND EARL A. STORM, County Commissioners of Divide County, North Dakota, Appellants.

(189 N. W. 107.)

**Schools and school districts — statute providing for the organizing new common school district held not to repeal statute for annexing territory.**

Chap. 197, Laws 1919, which provides for the organization of new common school districts is construed, and it is *held:*

1. This statute did not repeal § 1146, C L. 1913 relating to the annexation of territory to common school districts.

**Schools and school districts — statute for organizing new common school district held not to permit annexing of territory.**

2. The statute does not authorize the creation of a new common school district from an entire existing common school district and portions of adjacent common school districts. In other words the statute may not be used for the purose of annexing territory to an existing common school district.

Opinion filed April 26, 1922. Rehearing denied June 5, 1922.

Appeal from the District court of Divide county, *Lowe,* J. Defend-

ants appeal.

Affirmed.

*Olaf Braatelien,* State's Attorney, Divide County, and *C. J. Fisk,* for appellant.

"It is for the board to determine before taking action on such petition, whether the jurisdictional prerequisites in fact exist which such statute prescribes, but the petition need not show the existence thereof." School Dist. v. Thompson, 27 N. D. 464; Greenfield School Dist. v. Hannaford Special School Dist. 20 N. D. 397; State ex rel. v. Clark, 21 N. D. 523.

In the construction of statutes, it is the duty of the court to ascertain and give effect to the intention of the legislature. In order to do this, the courts are often compelled to construe "or" as meaning "and" and again "and" as meaning "or." U. S. v. Fisk, 70 U. S. 445, L. ed. 243; Sutherland on Statutory Construction § 252.

"Words and clauses in different parts of a statute must be read in a sense which harmonizes with the subject-matter and general purpose of the statute." 2 Lewis Sutherland Statutory Construction, 90 § 370.

*Funke & Eide,* for respondent.

It is well settled that the board of county commissioner proceedings under the provisions of chap. 197 of the Session Laws for 1919, has no jurisdiction and is without power to create a common school district out of any portion of a special school district. Nicholson v. Ferguson, 23 N. D. 153.

A paper is filed when it is deposited with the proper officer to become a part of the permanent records of his office. Bergerson v. Hobbs (Wis.) 71 N. W. 1056.

A paper is filed when it is delivered to the proper officer and by him received to be kept on file. Beebe v. Morrell (Mich.) 42 N. W. 1119; Appleton v. Warder (Minn.) 43 N. W. 791.

"Or" is a disjunctive particle that marks an alternative generally corresponding to "either" as "either this or that." Austin v. Oakes, 48 Hun. (N. Y.) 492, N. Y. S. 307.

"The word 'or' marks an alternative and generally corresponds in meaning to the word "either." Caster v. McClellan, (Ia.) 109 N. W. 1020.

It signified that one of two things may be done, but not both.   Caster v. McClellan, supra.


CHRISTIANSON, J.   This is an appeal from a judgment in a certiorari proceeding.   The writ was issued to review the proceedings of the county superintendent and the board of county commissioners acting together, and, so acting purporting to organize a new common school district.   The material facts are as follows: On May 12, 1921, there was filed with the county superintendent of schools of Divide county a petition signed by more than two-thirds of the electors residing in all of sections 19 to 36, inclusive of township 163, range 95 west, and in all of sections 1 to 18, inclusive, of township 162, range 95 west praying that such territory be organized as a new school district.   At the time these petitions were filed sections 19 to 36, both inclusive, of township 163, range 95 west constituted a part of the Mentor school district; section 3, the N. ½ of section 10, the E. ½ of section 4, and the N. E. ¼ of section 9, of township 162, range 95 west constituted the whole of Coalfield school district; and sections 1, 2, 5, 6, 7, 8, 10, 12, 13, 14, 15, 16, 17, 18, the S. ½ of section 10, the W. ½ of section 4 the S. ½ of section 9 and N. W. ¼ of section 9, in township 162, range 95, constituted a portion of Brown school district.   The three districts, namely, Mentor, Coalfield, and Brown, were all common school districts.   The lines of the old and the

proposed new school districts are indicated on the following plat:

The petition for the organization of a new school district was filed under the provisions of § 1147, C. L. 1913, as amended by chap. 197, Laws 1919, which (so far as pertinent to this action) reads as follows:

"The board of county commissioners and county superintendent may organize a new school district from another district or from portions of districts already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do

by at least two-thirds of the school voters residing in the proposed district."

Section 1148, C. L. 1913, provides:

"Whenever the board of county commissioners and county superintendent of schools shall be petitioned to organize a new school district or to change the boundaries of districts already organized, the county superintendent shall give public notice, for at least thirty days, to the residents of the districts whose boundaries will be affected by the organization of the new district, by mailing a notice to that effect to each school officer of such districts, and by publishing the same in the official newspaper of the county published nearest that district."

Upon receiving and filing the petitions, the county superintendent notified the board of county commissioners. Thereafter at a meeting of the county commissioners and the county superintendent of schools a date was fixed for hearing the petition, and notice of such hearing given as required by law. The hearing was set July 5, 1921. The petition was not filed with the county auditor until on the date of hearing. On the date fixed, namely, July 5, 1921, the parties interested appeared, and the matter was presented to the county superintendent and the board of county commissioners, but no action taken until July 30, 1921. On that day an order was entered granting the petition. In this proceeding the relator, Loucks, attacks the validity of the order so entered on the ground, among others that chap. 197, Laws 1919, does not authorize the county superintendent of schools and the board of county commissioners to create a new school district by taking an entire existing school district and adding thereto portions of other districts. This contention was sustained by the trial court, and after careful consideration we have reached the conclusion that the trial court's determination is correct.

It is apparent that a literal reading of chap. 197, Laws 1919, does not authorize this to be done. It is contended, however, by the respondents that the word "or" in the statute should be read "and," and that when so read it authorizes a new district to be formed from an entire existing school district and portions of adjacent school districts. If chap. 197, Laws 1919, was the only statutory enactment on the subject, the proposed construction would indeed have much force. Our laws, however, contain other provisions regarding the annexation of territory to existing school districts. Section 1146, C. L. 1913, as amended by chap. 213, Laws 1917, relating to the annexation of territory to a common school district, reads:

"The board of county commissioners and county superintendent of schools upon being petitioned so to do by a majority of the school voters residing in the districts whose boundaries will be affected, shall submit to the qualified voters at the next annual school election any proposal to change the boundaries of any school district or to consolidate two or more districts already organized. Upon ratification of the proposed change of boundaries the county commissioners shall arrange the boundaries as directed."

It is apparent, and it does not seem to be denied, that the real object sought to be accomplished by the organization of the proposed new school district was to annex to the then existing Coalfield school district certain territory belonging to Mentor and Brown school districts. In fact the petitions asked that the new school district be given the same number as Coalfield school district, namely, No. 16. It is conceded that a petition as prescribed by § 1146, C. L. 1913, was at no time presented to the board of county commissioners and the county superintendent of schools. Manifestly, if chap. 197, Laws 1919, can be utilized as contended for by the respondents in this proceeding for the real purpose of annexing adjacent territory to an existing common school district, then §' 1146, C. L. 1913, is in effect, rendered nugatory. If possible these statutes should be so construed as to be both effective. Section 1146, C. L. 1913, has not been repealed unless it is repealed by implication. It is elementary that repeals by implication are not favored.

"It is a reasonable presumption that all laws are passed with a knowledge of those already existing, and that the legislature does not intend to repeal a statute without so declaring." Lewis Sutherland, St. Const. (2d ed.) § 267. "The intention to repeal will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unvoidable, and only to the extent of the repugnance." "A later and an older statute will, if it is possible and reasonable to do so, be always construed together, so as to give effect, not only to the distinct parts or provisions of the latter, not inconsistent with the new law, but to give effect to the older laws as a whole, subject only to restrictions or modifications of the meaning, when such seems to have been the legislative purpose." "It is the duty of the court to so construe the acts, if possible, that both shall be operative." "There must be such a manifest and total repugnance that the two enactments cannot stand." "One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose." It is not enough that there is a discrepancy between different

parts of a system of legislation on the same general subject; there must be a conflict between different acts on the same specific subject." "When there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed." Lewis Sutherland St. Const. (2d ed.) § 247. "An implied repeal on the ground of repugnancy will not result in any case unless both the object and the subject of the statutes are the same; and if their objects are different both statutes will stand, though both relate to the same subject, because in such case the conflict is apparent only, and when the language is restricted to its own object, the two will run in parallel lines without meeting." 26 Am. & Eng. Ency. L. p. 727.

It is the function of the courts to interpret law, and not to make law. In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the legislature. The rules of interpretation and construction quoted above have for their sole object the discovery of the legislative intent, and they are valuable only in so far as, in their application, they enable us the better to ascertain and give effect to that intent. Whenever it is necessary to effectuate the obvious intention of the legislature the courts have power to change, and will change, "and" to "or," and vice versa. But "courts" will construe 'or' as 'and,' vice versa, only where from the context or other provisions of the statute, or from former laws relating to the same subject and indicating the policy of the state thereon, such clearly appears to have been the legislative intent." 25 R. C. L. p. 978. While we are free to admit that the proposition has caused us consideration difficulty, and we are not free from doubt as to the proper interpretation of chap. 197, Laws 1919, we are satisfied that § 1146, C. L. 1913, remains in full force and effect. If this is true, can it be possible that the legislature by chap. 197, Laws 1919, intended to authorize territory to be annexed to common school districts in a manner in which they had impliedly said in § 1146, C. L. 1913, that it must not be annexed? Manifestly such construction should not be given to chap. 197, Laws 1919, unless the plain and unequivocal language of the statute requires it to be so interpreted. See Sorenson et al. v. Tobiason et al. (N. D.) 188 N. W. 41. That situation does not exist here. Chap. 197, Laws 1919, is couched in ambiguous language. And we do not feel justified in saying that the legislature intended thereby to provide a new mode of annexing territory to an existing common school district. In other words, we are of the opinion that when it is sought to change the boundaries of an existing common school district by annexing

thereto territory lying in adjacent school districts, the procedure is governed by § 1146, C. L. 1913.

It follows from what has been said that the judgment appealed from is right, and must be affirmed. It is so ordered.

ROBINSON, BRONSON, and BIRDZELL, JJ., concur.

GRACE, C. J., concurs in the result.